**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| |
|---|
| ANGEL HERNANDEZ, on behalf of himself and all others similarly situated, |
| Plaintiffs, |
| v. |
| HARVARD UNIVERSITY, |
| Defendant. |

Civ. A. No. 1:12-cv-11978

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiffs here brought this suit in state court claiming that Defendant Harvard University is doing something that state law expressly forbids: taking money for itself that its patrons paid for the benefit of its function wait staff employees. Faced with those claims, Harvard removed this case to the federal court. Plaintiffs moved to remand, see docket no. 10, after which Harvard moved for summary judgment, see docket no. 11, arguing that Plaintiffs' claims are completely preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. At the outset, that motion must be denied because it is premature. Federal jurisdiction over state law claims is a threshold issue that must be resolved prior to any rulings on the question of § 301 preemption. Here, Plaintiffs have contested the Court's jurisdiction to hear this case by filing a motion for remand—and doing so before Harvard filed its own motion for summary judgment. Thus, the Court cannot address summary judgment until the preliminary matter of its jurisdiction is settled through a ruling on Plaintiffs' motion for remand. If remand is granted, the case will return to the state court, where the parties

may bring whatever summary judgment motions they please, after appropriate discovery.

Even if the Court were to address Harvard's summary judgment motion, however, that motion must be denied. Plaintiffs allege that Harvard has retained gratuities and service charges paid by its patrons (as Harvard has now admitted in its factual statement), a practice that flatly violates the Massachusetts Tips Law, M.G.L. c. 149, § 152A, and which gives rise to common law liability. See Amend. Compl., ¶¶ 6-8, 10-13; Cooney v. Compass Group Foodservice, 69 Mass. App. Ct. 632 (2007); Bednark v. Catania Hospitality Group, Inc., 78 Mass. App. Ct. 806 (2011). Harvard seeks to have this case thrown out as a legal matter, arguing that Plaintiffs' claims are completely preempted by § 301. That motion is long on federal labor policy as a general matter, but short on explaining how federal labor policy requires preemption here. Indeed, far from proving that Plaintiffs' claims will require interpretation of a collective bargaining agreement—an agreement that is, as Harvard itself concedes, **_silent_** with respect to gratuities and service charges—Harvard contends that preemption is warranted because allowing Plaintiffs to pursue their claims would "upset" its collective bargaining relationship. That is patently not the standard for preemption under § 301. If it were, no state law wage claim brought by unionized workers would ever survive § 301.

Notably, and as discussed in Plaintiffs' Motion to Remand, see docket no. 10 at 6-9, at least four federal courts have held that similar claims brought by wait staff employees are not preempted by § 301. See Alderman v. 21 Club Inc., 733 F. Supp. 2d 461 (S.D.N.Y. 2010) (state law claim challenging defendant's failure to remit entire

2

service charge to servers and bartenders not preempted by § 301); Wadsworth v. KSL

Grand Wailea Resort, Inc., 818 F. Supp. 2d 1240 (D. Haw. 2010) (same, and holding

that plaintiffs' claim was a "statutory claim that is independent of any obligations created

by the CBA"); Rodriguez v. Starwood Hotels & Resorts Worldwide, Inc., 2010 WL

8938524, *1 (D. Haw. Dec. 29, 2010) (same, and holding that state tips statute merely

"create[d] a minimum standard that ensures employees receive gratuity irrespective of

whether a hotel or restaurant discloses its withholding to its customers"); Kyne v. Ritz-

Carlton Hotel Co., L.L.C., 835 F. Supp. 2d 914, 929 (D. Haw. 2011) (same, citing Grand

Wailea and Starwood).  Notably, though, in each of those cases, the employees were

party to a collective bargaining agreement that actually *explicitly* permitted the

employer to retain a portion of all service charges.  Nonetheless, the courts in each of

those cases recognized that the employees were pursuing a statutory right independent

of the collective bargaining agreement because the state laws at issue required

employers to remit *all* proceeds of service charges to their employees (unless they

included adequate disclosures on their documents informing customers that the entire

charge was not being paid to employees).

    Here, the lack of the possibility of preemption is even more stark.  In this case,

unlike in Alderman, Grand Wailea, Starwood, and Ritz-Carlton, the parties' collective

bargaining agreement contains *no language* relating to gratuities or service charges.

In those cases, the collective bargaining agreement actually addressed service charges,

and even expressly permitted the employers to retain a share.  Yet each of those courts

still held that the employees' claims were not preempted.  In contrast, the collective

bargaining agreement in this case is, in all respects, silent on the issue of gratuities and

service charges.  Clearly, then, this cannot possibly be a case in which the Court will be required to interpret the parties' collective bargaining agreement, because there is nothing in the agreement to interpret.

This fact alone would normally be fatal to any preemption-based summary judgment motion.  Harvard, nonetheless, contends that Plaintiffs' claims are preempted because the totality of its relationship with the union—though **unexpressed** in the collective bargaining agreement—indicates an understanding between the parties that the wait staff employees would not receive gratuities or service charges.  That argument fails for three reasons: first, because § 301 does not preempt claims based merely on the existence of a collective bargaining relationship; second, because the purported understanding cited by Harvard does not speak to the conduct being challenged in this lawsuit; and third, because any such understanding, were it to exist, would be an understanding to engage in illegal conduct, which cannot be preempted by § 301.[1] Simply put, Harvard is attempting to use the mere existence of its collective bargaining relationship with the wait staff employees' union to preempt substantive state law claims under the LMRA.  No court has ever endorsed such an expansive reading of the LMRA, however.

In the alternative, Harvard contends that Plaintiffs' claims are preempted under Lodge 76, International Association of Machinists v. Wisconsin Employment Relations Commission, 427 U.S. 132 (1976), and San Diego Building Trades Council v. Garmon,

---

[1]     This is not to say that the Tips Law prohibits Harvard from collecting and retaining a surcharge in certain circumstances, as Harvard appears to contend in its Motion.  As discussed below, infra at 13, the Tips Law allows employers to retain certain fees if proper disclosures are made to customers.  The federal courts in Grand Wailea, Starwood, and Ritz-Carlton noted this point as well in interpreting the Hawaii tips statute, which permits employers to retain the proceeds of surcharges by including a sufficient disclosure regarding the surcharge in the documents it provided to its patrons.  (Here, as Plaintiffs expect to show in the course of this lawsuit, no such disclosure was made.)

359 U.S. 236 (1959).  Plaintiffs have already discussed how that is not the case in their

Motion to Remand.  See docket no. 10 at 14-19.  In any event, Harvard's attempt to

invoke those two decisions fails.  Machinists preempts state laws that impose

restrictions on labor and managerial weapons of "self-help" that were intentionally left

unregulated by Congress when it enacted the National Labor Relations Act.  See

Belknap, Inc. v. Hale, 463 U.S. 491, 499 (1983); Rhode Island Hospitality Ass'n v. City

of Providence, 667 F.3d 17, 26 (1st Cir. 2011).  Garmon preempts state laws that

interfere with the National Labor Relation Board's interpretation and enforcement of

federal labor policy, as embodied by the NLRA.  See Golden State Transit Corp. vs. City

of Los Angeles, 475 U.S. 608, 613 (1986).  Nothing about the Tips Law or the unjust

enrichment doctrine qualifies for preemption under these two decisions.  Both are laws

of general applicability that impose minimal labor standards on all employers throughout

Massachusetts.  They do not interfere with an area of federal labor policy that Congress

sought to leave unregulated, or which is actively interpreted or enforced by the NLRB in

its role as the arbiter of federal labor law.  Indeed, identical preemption challenges

under Machinists and Garmon have been rejected by the four courts to address these

claims in the cases referenced above, and Harvard, for its part, does not cite a single

decision to the contrary.

Simply put, Harvard is grasping at straws.  Nothing in Harvard's collective

bargaining agreement with the union discusses, regulates, or even mentions gratuities

or service charges.  Nothing in the collective bargaining agreement will need to be

interpreted in evaluating Plaintiffs' claims.  Nothing in the Tips Law or the unjust

enrichment doctrine purports to exert control over economic areas that Congress

intended to be left unregulated. And nothing in the Tips Law or the unjust enrichment doctrine affects unionized employers to any greater degree than non-unionized employers. Accordingly, there is no basis for a finding of § 301 preemption in this case, and Harvard's motion for summary judgment (if the Court even reaches the merits of the motion) must be denied.

## ARGUMENT

## I.   THE COURT LACKS JURISDICTION TO RULE ON HARVARD'S MOTION.

As a threshold matter, Harvard's motion must be denied because the Court lacks jurisdiction to adjudicate this dispute. Harvard removed this case to the federal court on the grounds that Plaintiffs' state law claims are preempted by § 301. See docket no. 1. Plaintiffs have moved to remand the case back to the state Superior Court. See docket no. 10. The Court must decide that motion to remand prior to ruling on summary judgment, since any defect in the removal would deprive this Court of subject matter jurisdiction (which is required in order for it to rule on any other issues). See Warner v. Atkinson Freight Lines Corp., 350 F. Supp. 2d 108, 114 (D. Me. 2004) ("Subject matter jurisdiction is a threshold issue where removal from state court is contested. Hence, the Court must first address Plaintiffs' Motion to Remand") (internal citation omitted); Roddy v. Grand Trunk Western R.R. Inc., 395 F.3d 318, 326 (6th Cir. 2005) ("We conclude that there was no removal jurisdiction in this case and that the case should be remanded to state court. Because there is no removal jurisdiction, we do not have jurisdiction to reach the question of whether [plaintiff's] state claim is in fact preempted by federal law"). This jurisdictional issue notwithstanding, Plaintiffs hereby respond to Harvard's

preemption arguments on their merits, in the event that the Court chooses to reach the merits of Harvard's motion.

## II.    PLAINTIFFS' CLAIMS DO NOT REQUIRE INTERPRETATION OF THE PARTIES' COLLECTIVE BARGAINING AGREEMENT.

It is bedrock law that § 301 only preempts claims that depend upon the meaning of a collective bargaining agreement.  See Flibotte v. Pennsylvania Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997) ("[T]he basic test . . . [is] that section 301 preempts a state-law claim, whether founded upon the state's positive or common law, if a court, in passing upon the claim, would be required to interpret the collective bargaining agreement").  This means that two types of claims are preempted by § 301: claims that allege conduct that "constitutes a breach of a duty that arises pursuant to a collective bargaining agreement," and claims that "arguably hinge[] upon an interpretation of the collective bargaining agreement."  Id.  Both types of claims require something *in* the actual collective bargaining agreement for the courts to interpret.  See, e.g. Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 407 (1988) (LMRA does not preempt state law when the "factual inquiry [under the state law] does not turn on the meaning of any provision of a collective bargaining agreement"); Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 10 (1st Cir. 1999) (LMRA preempts state law "whenever resolution of a plaintiff's claim is substantially dependent on analysis of a CBA's terms").[2]

---

[2]      See also, e.g., Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401, 1413 (9th Cir. 1991) (LMRA does not preempt state law claim where "no provision in the collective bargaining agreements . . . define[d] standards for the . . . type of underlying conduct of which [plaintiff] complains"); Oberkramer v. IBEW-NECA Service Center, Inc., 151 F.3d 752, 756 (8th Cir. 1998) ("When a state law claim is independent—in that its resolution does not require construing the collective-bargaining agreement—it is not preempted") (internal quotation and citation omitted); Brown v. National Football League, 219 F. Supp. 2d 372, 388 (S.D.N.Y. 2002) (plaintiffs' claims not preempted where "nothing in the CBA remotely purports to address the [conduct challenged by plaintiffs], let alone to provide that [conduct challenged by plaintiffs] is conduct 'permitted by [the CBA]'"); Chube v. Exxon Chemical Americas, 760 F. Supp. 557, 560 (M.D. La. 1991) ("To be 'independent' of the collective bargaining agreement, and thus not be

Here, there is nothing in the parties' agreement addressing gratuities or service charges.  Harvard even **_concedes_** this point in its brief, noting, as it must, that its agreement with the union is "silent on the specific issue of tips."  Def.'s Memo. at 11 n.8.  For this reason alone, its attempt to obtain summary judgment under § 301 fails right out of the gate—there simply is **_nothing_** in the agreement requiring judicial interpretation.  Nonetheless, citing <u>DiGiantommaso v. Globe Newspaper Co., Inc.</u>, 632 F. Supp. 2d 85 (D. Mass. 2009), Harvard contends that § 301 can preempt claims that may implicate the parties' bargaining history, even if they do not require interpretation of an actual collective bargaining agreement.  This is a novel proposition, and one for which <u>DiGiantommaso</u> does not stand.  In <u>DiGiantommaso</u>, the plaintiffs brought several contractual claims (including a claim for breach of contract) challenging the defendant's decision to eliminate coffee breaks.  <u>See</u> <u>DiGiantommaso</u>, 632 F. Supp. 2d at 87.  Now, nothing in the state's wage laws requires an employer to provide its employees with coffee breaks.  The plaintiffs' claims thus "depend[ed] upon the existence of an implied obligation or duty on the part of the [defendant] to provide coffee breaks (or, in the alternative, to pay employees for time worked during those breaks)." <u>Id.</u> at 88.  In order to prove the existence of such an obligation, the plaintiffs argued that the defendant had a history of permitting coffee breaks, and alleged that the defendant's obligation arose from "other circumstances surrounding the parties' employment relationship."  <u>Id.</u> at 88-89.

In other words, the court in <u>DiGiantommaso</u> found that the plaintiffs' claims were preempted because they were suing for breach of an implied contractual obligation that

---

preempted, the resolution of a state law claim must turn on purely factual questions not touching upon the terms of the collective bargaining agreement").

arose **as a result of the collective bargaining process**.  <u>See</u> <u>id.</u> at 89.  That narrow

holding is a far cry from the rule touted by Harvard, which would, if accepted, result in

preemption of every state law claim brought by unionized employees, on the theory that

such claims require an examination or understanding of the parties' collective

bargaining relationship—a result that the courts have repeatedly rejected.  <u>See</u>

<u>Caterpillar v. Williams</u>, 482 U.S. 386, 396 n.10 (1987) ("Section 301 does not, as

[petitioner] suggests, require that all 'employment-related matters involving unionized

employees' be resolved through collective bargaining and thus be governed by a federal

common law created by § 301"); <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 211-12

(1985) ("Not every dispute concerning employment, or tangentially involving a provision

of a collective bargaining agreement, is pre-empted by § 301 or other provisions of the

federal labor law"); <u>Alderman</u>, 733 F. Supp. 2d at 470 (refusing to preempt state

overtime and tips statute claims; defendant's argument that the "parties' past practice of

arbitrating similar wage and hour disputes requires arbitration of the present overtime

claim" had "no basis").

     Even if the parties' bargaining history could support a finding of § 301

preemption, Harvard's argument would fare no better.  It is established that parties to a

collective bargaining relationship cannot bargain to engage in illegal activity.  <u>See</u> <u>Allis-</u>

<u>Chalmers</u>, 471 U.S. at 212 ("Clearly, § 301 does not grant the parties to a collective-

bargaining agreement the ability to contract for what is illegal under state law").  Here,

Plaintiffs are not claiming that Harvard failed to do something that it agreed to do as part

of the collective bargaining process (as occurred in <u>DiGiantommaso</u>).  Nor are they

alleging that the agreement contains an implicit legal obligation that Harvard breached

(again, as occurred in DiGiantommaso).  They are claiming that Harvard has violated

state law by taking money that legally belongs to its wait staff employees.  In this

respect, their claim is no different than any other claim for failure to adhere to a minimal

labor standards statute, such as a claim that an employer was paying its employees

less than the minimum wage, or not paying overtime to its non-exempt hourly

employees.  Such claims would certainly not fall within the scope of § 301:

> Nothing that labor and management put in a collective bargaining agreement
> exempts them from state laws of general application.  If a CBA were to say: "the
> workers will receive the minimum wage under FLSA, and not one cent more no
> matter what state law provides," that would be ineffectual.  So too would an
> agreement along the lines of: "Because our base hourly rate is more than 150%
> of the minimum wage, we need not pay overtime rates under state law."  . . . .
>
> Management and labor acting jointly (through a CBA) have no more power to
> override state substantive law than they have when acting individually.  Imagine
> a CBA saying: "Our drivers can travel at 85 mph, without regard to posted speed
> limits, so that they can deliver our goods in fewer compensable hours of work
> time."  That clause would be ineffectual.

Spoerle v. Kraft Foods Global, Inc., 614 F.3d 427, 430 (7th Cir. 2010).

    Harvard's response to this argument is that the collective bargaining agreement

symbolizes an understanding that the wait staff employees would not receive gratuities

or service charges, but would be paid a higher base hourly wage instead.  That is all

well and good, but it is not a defense to liability under the Tips Law.  The Tips Law is not

concerned with what Harvard or the union understood about gratuities and service

charges.  As the Massachusetts Appeals Court explained in Cooney v. Compass Group

Foodservice, 69 Mass. App. Ct. 632 (2007), gratuities and service charges must be

remitted in full to wait staff employees, irrespective of whether the employer can show

that it did not intend for those payments to go to the wait staff employees (and

irrespective of whether the employees expected to receive those payments).  See id. at

638.  To the extent that liability under the Tips Law is premised on anyone's "understanding" at all, it is premised only on the ***customers'*** understanding of what they are paying—in other words, whether the ***customers*** reasonably expected that their money would be paid to the wait staff employees.  See Bednark v. Catania Hospitality Group, Inc., 78 Mass. App. Ct. 806, 815 (2011).  Thus, even accepting Harvard's argument about its understanding with the union as true, that argument gets it nowhere.  Its subjective understanding is not a defense to liability.

Nor does the alleged understanding between Harvard and the union implicate conduct that Plaintiffs are actually challenging in this case.  Plaintiffs are not claiming that Harvard ***should*** charge a service charge or that it cannot charge a properly-disclosed house fee to pay for administrative costs (with sufficient disclosures that it is not a tip, gratuity, or service charge, see Bednark supra).  Plaintiffs are claiming that Harvard ***is*** charging a service charge and keeping that money for itself, while confiscating those additional gratuities that patrons do pay to the wait staff employees, and without the disclosures required by the Tips Law that would allow Harvard to keep the money.  Thus, the purported understanding between Harvard and the union about service charges and gratuities does not speak to the conduct at issue in this case.  Nor could it, as any such understanding, whereby the parties agreed that Harvard could charge and retain a service charge or pocket tips left for the wait staff employees by patrons, would be illegal under state law.

Ultimately, Harvard's position is straightforward, but wrong.  It contends that it cannot be held liable under state law for retaining gratuities and service charges because it never intended to pay its wait staff employees any gratuities and service

charges.  That is not the standard for preemption under § 301, however, nor is it a

defense to liability under the Tips Law.  See Somers v. Converged Access, Inc., 454

Mass. 582, 592 (2009) ("Nor would we be persuaded by a restaurant employer's

argument that, despite the provisions of [the Tips Law], it should not be required to pay

its wait staff the fee charged customers as a designated service charge because, had it

realized that it had this obligation, it would have paid the wait staff a lower hourly

wage").  Here, the parties' agreement is silent with respect to gratuities and service

charges.  And even if it were not, Plaintiffs' claims could still proceed because their

claims confer upon employees substantive rights that cannot be abridged through the

collective bargaining process.  Thus, Harvard's motion for summary judgment must be

denied, if for no other reason than the fact that its agreement with the union does not

address or implicate the conduct challenged here.[3]

## III.   PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY MACHINISTS.

In Machinists, the Supreme Court "proscribe[d] state regulation and state-law

causes of action concerning conduct that Congress intended to be unregulated, conduct

that was to remain a part of the self-help remedies left to the combatants in a labor

dispute."  Belknap, Inc. v. Hale, 463 U.S. 491, 499 (1983).  Under this so-called

"Machinists rule," states are "prohibited from imposing additional restrictions on

economic weapons of self-help, such as strikes or lockouts, unless such restrictions

---

[3]       Even if Harvard could mount a defense based on its unwritten "understanding" with the union that it would not pay gratuities or service charges to the function wait staff employees (which it cannot), this motion would still fail.  The mere argument that Harvard had an unexpressed agreement with the union not to pay gratuities or service charges to the function wait staff employees would not require any court or jury to "interpret" the collective bargaining agreement or examine the collective bargaining relationship.  Harvard could simply make its case—as it has in this motion—that it only agreed to pay the wait staff employees a higher base hourly wage and benefits because it never intended to pay them the gratuities and service charges it collected from customers.  Whether or not the court or the jury accepted such a defense (which is, again, not even a valid defense under the Tips Law), no interpretation of the collective bargaining agreement would be required.

presumably were contemplated by Congress." Golden State Transit Corp. v. City of Los

Angeles, 475 U.S. 608, 614-15 (1986). Machinists is of limited application, however. It

does not preempt "state action which only remotely affects the bargaining powers of the

parties to a labor dispute," or "which regulate[s] activity only peripherally related to labor

policy, without placing conditions on the conduct of the parties to the dispute."

International Paper Co. v. Town of Jay, 928 F.2d 480, 484 (1st Cir. 1991). Nor does it

preempt state laws that impose "[m]inimum labor standards [that] effect union and non-

union employees equally, and neither encourage or discourage the collective bargaining

processes." Metropolitan Co. v. Commonwealth of Mass., 471 U.S. 724, 755 (1985).

Here, Machinists is a red herring. Harvard's invokes that decision on the theory

that Plaintiffs' claims will throw a wrench in the collective bargaining process by

upsetting the balance of power between the parties. In sum, it argues that its

bargaining history with the union reflects an understanding that wait staff employees will

not receive gratuities, and that Plaintiffs' claims, if enforced, will inhibit free bargaining

between the parties. But that is simply not what is happening here. Even in the face of

Plaintiffs' claims, Harvard free to impose a fee on its patrons to pay for such things as

administrative costs and building maintenance, and not give the proceeds of that fee to

its employees, assuming it provides sufficient disclosure that such fees are not

gratuities or service charges. Indeed, the Tips Law expressly allows employers to

impose and retain a "house or administrative fee . . . if the employer provides a

designation or written description of that house or administrative fee, which informs the

patron that the fee does not represent a tip or service charge." M.G.L. c. 149, §

152A(d). What Harvard is ***not*** free to do is to charge a fee that patrons reasonably

believe to be a gratuity or service charge, and then keep that money for itself.  The Tips

Law and the unjust enrichment doctrine merely prohibit Harvard from having it both

ways by collecting money paid for their employees' benefit (either in the form of service

charges or additional gratuities from patrons) and then refusing to give that money to

their employees.  In this respect, neither the Tips Law nor the unjust enrichment

doctrine restrict the forms of economic pressure that Harvard can use when bargaining

when its unionized employees, which is all that <u>Machinists</u> prohibits.[4]

Second, <u>Machinists</u> does not preempt statutes that do nothing more than impose

uniform minimal standards of compensation on union and non-union employees alike.

The Tips Law is precisely such a statute.  The Tips Law protects two categories of

worker—wait staff employees and service employees—regardless of whether they are

members of a union.  Its requirements extend to employers as a general matter,

regardless of whether they operate a union shop.  In fact, the Tips Law is not even

confined to the employment relationship: it prohibits not only employers but "***other***

***persons***" from taking or accepting gratuities or service charges from protected

employees, and renders "***any person***" liable for that conduct.  <u>See</u> M.G.L. c. 149, §

152A(b), (f) (emphasis added); <u>DiFiore v. American Airlines, Inc.</u>, 454 Mass. 486, 492

(2009) ("The obligation to remit the service charge to the food and beverage servers

was not limited to the servers' direct employer; the Act imposed that obligation on the

---

[4]     <u>Compare</u>, <u>e.g.</u>, <u>Chamber of Commerce of U.S. v. Brown</u>, 554 U.S. 60, 69 (2008) (state law prohibiting employers that received more than $10,000 in state funds from using such funds to "assist, promote, or deter union organizing" preempted by <u>Machinists</u>); <u>South Bay Boston Mgmt. v. UNITE HERE, Local 26</u>, 587 F.3d 35, 41 (1st Cir. 2009) (city regulation refusing to issue building permits until developer entered into agreement with union preempted by <u>Machinists</u>); <u>Greater Boston Chamber of Commerce v. City of Boston</u>, 778 F. Supp. 95, 96-97 (D. Mass. 1991) (city ordinance prohibiting hiring of replacement workers during strikes and lock-outs preempted by <u>Machinists</u>); <u>Charlesgate Nursing Center v. Rhode Island</u>, 723 F. Supp. 859, 865-66 (D.R.I. 1989) (state law prohibiting employers from using third party to recruit workers to replace striking workers preempted by <u>Machinists</u>).

'employer or other person' that assessed the service charge").  Similarly, the unjust

enrichment doctrine prohibits any party—not just employers, or union employers—from

taking a benefit to which it is not entitled.  See Santagate v. Tower, 64 Mass. App. Ct.

324, 336 (2005).  Thus, far from restricting the forms of economic pressure that

employees and employers can exert as part of collective bargaining, the Tips Law and

the unjust enrichment doctrine merely establish a bedrock prohibition against the taking

of money to which employers have no legal entitlement.

In response, Harvard contends that the Tips Law is not a minimal standards

statute because it would upset the parties' bargained-for relationship by requiring

Harvard to pay "significant" sums to its wait staff employees.[5]  It draws this argument

from 520 South Michigan  Ave. Associates, Ltd. v. Shannon, 549 F.3d 1119 (7th Cir.

2008), a decision that addresses a set of facts so different from this case that **even**

**Harvard** is forced to acknowledge the distinction in its motion.  See Def.'s Memo. at 18

n.12.  Shannon involved a state law that was enacted in the midst of the longest

ongoing strike in union history between UNITE HERE Local 1, which represented hotel

room attendants, and one of the oldest and most prestigious hotels in Chicago, the

Congress Plaza.  See Shannon, 549 F.3d at 1121-22; Sarah Schulte, "Congress Hotel

Strike Marks 7th Anniversary," ABC Local, available at http://abclocal.go.com/wls/

story?section =news/local&id=7496534.  The new law required hotels operating in Cook

County (where Chicago is located) to give their room attendants a 20 minute meal break

after five hours of work during a seven hour shift.  See Shannon, 549 F.3d at 1121-22.

---

[5]         Harvard focuses this argument on the Tips Law, specifically, so Plaintiffs respond to it in kind.
However, Plaintiffs note the proceeding analysis applies with equal force to their claim for unjust
enrichment, which is a common law doctrine that applies generally to everyone in the Commonwealth and
does not target or purport to regulate the bargaining relationship of unionized employers and employees.

In addition, that law "create[d] a presumption of retaliation and shift[ed] the burden of **proof** to the employer," requiring the employer to prove that its "***sole reason***" for any disciplinary conduct was a "legitimate business reason."  Id. at 1134-35 (emphasis original).  If the employer failed to carry this burden, it was liable for automatic treble damages.  See id.

The Seventh Circuit found all of these facts necessary to its ruling that the state law violated Machinists.  It held that the statute was not one of general application because it did not target one specific industry or occupation, but one specific occupation in one specific industry in one specific county out of 102 other state counties.  See id. at 1131.  It also held that the statute did not impose minimal labor standards because its burden-shifting and liability provisions were unique in the annals of state law.  See id. at 1134-35.  As the Court observed, "[w]e are aware of no law or contract that establishes such a shifting of the burden of proof [as does the new state law], nor which requires proof from the employer that the 'sole reason' . . . for any disciplinary conduct was legitimate business reason.  Moreover, this presumption and the shifting of the burden of proof applies indefinitely; it does not matter how long ago it was that an employee exercised rights under the [statute] or alleged the employer was not complying with the terms of the [statute]."  Id. at 1135.  Finally, the Court found that the law had been intended by the legislature, based on its committee reports, to alter the bargaining positions of hotels and room attendants in Chicago, likely in response to the ongoing strike.  See id. at 1138-39.

Clearly, the Tips Law bears no resemblance to the statute at issue in Shannon.  The Tips Law has been on the books for approximately 60 years, and there is nothing in

its legislative history to suggest that it was enacted either in response to a labor dispute or to alter the power dynamic between unions and employers.  It is patently a law of general application, protecting all qualified employees throughout the Commonwealth.  See M.G.L. c. 149, § 152A(a).  Indeed, it is not even limited to the restaurant and banquet industry—it encompasses every type of tipped employee, including skycaps, hair dressers, taxi cab drivers, and movers.  See id. (protecting "service employees," meaning "person[s] who works in an occupation in which employees customarily receive tips or gratuities, and who provides service directly to customers or consumers, but who works in an occupation other than in food or beverage service, and who has no managerial responsibility").  Finally, the Tips Law's enforcement mechanism is not nearly as "onerous" as the statute in Shannon.  It is privately enforceable through the Wage Law, M.G.L. c. 149, § 150, and the Wage Law provides for mandatory treble damages for *any* wage violation, including failure to pay the minimum wage and failure to pay overtime.  See M.G.L. c. 149, § 150.  Moreover, the Wage Law contains no uniquely punitive burden-shifting or evidentiary scheme; employers are not, for example, presumed "guilty until proven innocent" under the Wage Law, nor are they subject to an indefinite statute of limitations, as was the case with the state law in Shannon.

Harvard's argument that enforcing the Tips Law in this case would "totally upend" the balance of power between itself and the union also fails because the LMRA does not preempt state laws that tangentially impose increased costs on unionized employers.  As the First Circuit has explained:

> [I]n any industry the price of whose product or service—such as electric power, telephone, natural gas, or even rent controlled real estate—is regulated, a state

would find its regulatory system vulnerable to preemptive attack on the ground
that the overall control of price was too inhibiting an influence on collective
bargaining.  Logic, however, would carry beyond simple price control.  Any state
or municipal program that substantially increased the costs of operation of a
business in a competitive market would be similarly vulnerable to the preemption
argument.  Clean air and water laws, selective cutting requirements in forest
operations, industrial safety standards, tax increases—all pro tanto hobble
collective bargaining in that they constitute part of the universe in which collective
bargaining takes place, just as do general prosperity or depression.  But they do
not add to or detract from the rights, practices, and procedures that together
constitute our collective bargaining system.

Massachusetts Nurses Association v. Dukakis, 726 F.2d 41, 45 (1st Cir. 1984).

    Finally, the fact that the union and Harvard have, on one prior occasion,

arbitrated a dispute that tangentially related to gratuities does not mandate preemption.

That lone arbitration did not pertain to Harvard's policy of retaining gratuities and service

charges.  Rather, it involved the termination of an employee who accepted a gratuity

from a customer.  Thus, the decision cited by Harvard turned on the question of whether

Harvard could permissibly terminate an employee, ***not*** whether its policies with respect

to gratuities and service charges were lawful.  And even if it had, preemption would still

be improper.  As the Supreme Court made clear in Lingle, mere "parallelism" between

the subject matter of state law and a collective bargaining agreement does not require §

301 preemption.  See Lingle, 486 U.S. at 409.  "In other words, even if dispute

resolution pursuant to a collective-bargaining agreement . . . and state law . . . would

require addressing precisely the same set of facts, as long as the state-law claim can be

resolved without interpreting the agreement itself, the claim is "independent" of the

agreement for § 301 pre-emption purposes."  486 U.S. at 410.  Thus, Harvard's

reference to a single arbitration in which an employee was terminated for accepting a tip

is irrelevant.

IV.    **PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY <u>GARMON</u>.**

In <u>Garmon</u>, the Supreme Court held that an employer could not seek damages in state court against unions that had engaged in picketing at the employer's factory, since the picketing may have constituted an unfair labor practice under the NLRA for which the employer could seek redress from the NLRB.  <u>See</u> <u>Garmon</u>, 359 U.S. at 238, 241. Subsequently, courts adopted <u>Garmon</u> as "preclud[ing] state interference with the National Labor Relation Board's interpretation and active enforcement of the integrated scheme of regulation established by the National Labor Relations Act."  <u>Golden State Transit</u>, 475 U.S. at 613.  Yet even then, they recognized that <u>Garmon</u> "admits to some exceptions."  <u>Chaulk Services, Inc. v. Massachusetts Comm'n Against Discrimination</u>, 70 F.3d 1361, 1364 (1st Cir. 1995).  "For instance, where the conduct at issue is of only 'peripheral concern' to federal labor policy, the states are not precluded  from regulating the activity."  <u>Id.</u>, quoting <u>Garmon</u>, 359 U.S. at 243.  "Similarly, state action is not preempted [by <u>Garmon</u>] where the regulated conduct touches interests 'so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, courts cannot infer that Congress has deprived the states of the power to act'."  <u>Id.</u>, quoting <u>Garmon</u>, 359 U.S. at 243.

Harvard cannot demonstrate how <u>Garmon</u> is implicated in this dispute.  Its sole argument is that preemption is required under <u>Garmon</u> because Plaintiffs are seeking to obtain something they could normally obtain only through the collective bargaining. That argument is absurd.  The NLRA is, like the collective bargaining agreement in this case, silent on the matter of gratuities and service charges.  <u>See</u> 29 U.S.C. §§ 157-159. It is therefore impossible for Plaintiffs' claims to interfere with the NLRB's interpretation

or enforcement of the NLRA, since nothing in the NLRA bears on their claims.  <u>See</u>

<u>Beckwith v. United Parcel Services, Inc.</u>, 889 F.2d 344, 347 (1st Cir. 1989) (state statute

requiring execution of payroll deduction agreements as a condition of employment was

not preempted under <u>Garmon</u>, as such conduct was "not subject to the regulatory

jurisdiction of the NLRB"); <u>Tosti v. Ayik</u>, 386 Mass. 721, 727-28 (1982) (no preemption

where circulation of defamatory material, ostensibly constituting libel under state law,

was not actionable under the NLRA).

Moreover, retention by an employer of gratuities and service charges is not a

permissible subject of collective bargaining.  As discussed above, the Tips Law requires

employers to remit in full all payments of all gratuities and service charges to their

eligible employees.  A union and an employer, bargaining over the terms of their

collective agreement, could no more consent to allow the employer to keep such

payments for itself than they could consent to allow the employer to disregard any other

minimal labor statute, such as by agreeing to allow the employer to pay its employees

less than the minimum wage.  <u>See</u> <u>LaRosa v. United Parcel Service, Inc.</u>, 23 F. Supp.

2d 136, 144 (D. Mass. 1998) ("Such a rule would provide union employers with an

irresistible incentive to pour into the collective bargaining agreement all the . . .

individual rights protected by state law, and then claim immunity from suit before juries

in favor of an arbitration process in which it exercises joint power with the union").

Harvard's reliance on <u>Garmon</u> is therefore misplaced.

## **CONCLUSION**

For all the reasons set forth above, the Court should deny Harvard's motion for

summary judgment.

Respectfully submitted,

ANGEL HERNANDEZ, on behalf of
himself and all others similarly situated,

By their attorneys,


 /s/ Shannon Liss-Riordan
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
Brant Casavant, BBO # 672614
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Dated:  December 20, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2012, a true copy of this document was
served via electronic filing on all counsel of record in this case.


 /s/ Brant Casavant
Brant Casavant