```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS


ANGEL HERNANDEZ, on behalf    )
of himself and all others     )
similarly situated,           )
                              )
            Plaintiffs,       )   CIVIL ACTION NO.
                              )   12-11978-DPW
                              )
       v.                     )
                              )
HARVARD UNIVERSITY,           )
                              )
            Defendant.        )
```

MEMORANDUM AND ORDER
March 28, 2013

## I.  BACKGROUND

Since 1999, plaintiff Angel Hernandez has been employed as a wait staff employee with the Harvard Faculty Club, a food service establishment operated by Harvard University.  Under the terms of the governing collective bargaining agreement ("CBA") between Harvard University and UNITE HERE Local 26, AFL-CIO, wait staff employees are paid a flat hourly rate.  Faculty Club patrons are told not to tip the wait staff, and wait staff are not permitted to retain any money nevertheless left by patrons as tips.  The Faculty Club also imposes on patrons a surcharge of 18-22% for certain events, but that surcharge is not remitted to the wait staff.

Hernandez argues that the retention of service charges and tips by the Faculty Club is illegal under the Massachusetts Tips Law, Mass. Gen. Laws ch. 149, § 152A.  Under the Tips Law, employers may not retain tips given to wait staff, M.G.L. ch. 149, § 152A(b), and employers that impose a service charge must remit that service charge to wait staff employees, *id.* § 152A(d).  The Law, however, allows an employer to impose and retain surcharges properly denominated as a house or administrative fee if the employer informs patrons that the fee does not represent a service charge for wait staff employees.  *Id.; see generally Bednark* v. *Catania Hospitality Group, Inc.*, 942 N.E.2d 1007 (Mass. App. Ct. 2011).

On September 20, 2012, Hernandez filed a putative class action in Middlesex Superior Court on behalf of all wait staff employees of the Faculty Club and of the Loeb House, another food service establishment operated by Harvard.  The operative amended complaint, filed on September 27, 2012, includes a claim under the Massachusetts Tips Law (Count I) and a claim for unjust enrichment under Massachusetts common law (Count II).  Both claims are premised on the allegedly illegal retention of gratuities by Harvard.

Defendant removed the case to this court on grounds of "complete preemption" by federal labor law.  Plaintiff has moved to remand.  Defendant has moved, prior to discovery, for summary

judgment.  Because I conclude that this case must be remanded to state court, I express no opinion on the merits of defendant's motion for summary judgment, except as it presents questions of complete preemption which must be resolved in the consideration of the motion to remand.

## II. ANALYSIS

### A.  *Legal Framework*

Because Hernandez pleads claims arising under state law, the "well-pleaded complaint" rule would typically prohibit the exercise of federal question jurisdiction.  *See* 28 U.S.C. § 1441(c); *Franchise Tax Bd.* v. *Construction Laborers Vacation Trust*, 463 U.S. 1, 9-11 (1983).  Harvard, however, argues that § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, "completely preempts" Hernandez's claims--thereby "transmuting the state law claims into federal claims and permitting removal under federal question doctrine."  *Cavallaro* v. *UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 4 (1st Cir. 2012).  As Chief Judge Easterbrook has framed the concept, "'[c]omplete preemption' is a misleadingly named doctrine that applies to subjects over which federal law is so pervasive that it is impossible to make out a state-law claim, no matter how careful the pleading."  *Hughes* v. *United Air Lines, Inc.*, 634 F.3d 391, 393 (7th Cir. 2011).  Harvard, as the party undertaking removal, bears the burden of establishing federal jurisdiction.  *BIW*

*Deceived* v. *Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997).[1]

"Complete preemption" under § 301 of the LMRA applies to state law claims "founded directly on rights created by collective-bargaining agreements" or "substantially dependent on analysis of a collective-bargaining agreement." *Cavallaro*, 678 F.3d at 5 (quoting *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 394 (1987)). Although exercising jurisdiction over the case would be appropriate if either of plaintiff's claims were properly removable, *Cavallaro*, 678 F.3d at 5, I find neither the statutory nor common law claim to be completely preempted.

### B. Claim Founded on CBA-Created Rights

The governing CBA does not entitle wait staff employees to receive gratuities; in fact, the CBA is silent on the issue of

---

[1] Harvard's notice of removal also raised the contention that Hernandez's claims are preempted by the National Labor Relations Act ("LMRA"), 29 U.S.C. § 151 *et seq.*, under the preemption doctrines described by the Supreme Court in *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 (1959) ("*Garmon* preemption"), and *Lodge 76, Int'l Ass'n of Machinists* v. *Wisconsin Emp. Relations Comm'n*, 427 U.S. 132 (1976) ("*Machinists* preemption").
Harvard, in its opposition to the motion to remand, wisely does not waste energy arguing that *Garmon* or *Machinists* preemption provide a grounds for removal. *Caterpillar Inc.* v. *Williams*, 482 U.S. 386, 397-98 (1987), described *Garmon* and *Machinists* preemption as defensive preemption doctrines not providing a basis for removal. *See also Cavallaro*, 678 F.3d at 4 & n.3 (distinguishing complete preemption from defensive preemption). Defensive preemption under the NLRA, unlike "complete preemption" under the LMRA, does not provide a basis for federal jurisdiction.

gratuities.  And, as I discuss in more detail below, Harvard argues that the CBA (or at least the bargaining relationship) contemplates a no-tipping policy.  As a consequence, it is evident Hernandez's claims are based on duties created by state law and are not founded on the governing CBA.  This eliminates one of the two possible means of complete preemption.  *Cf. Alderman* v. *21 Club Inc.*, 733 F. Supp. 2d 461, 469 (S.D.N.Y. 2010) (claim under analogous New York statute not completely preempted because attempt to recover tips above 18% gratuity guaranteed by governing CBA was necessarily based on independent state law right rather than CBA).

### C.  *Claim Substantially Dependent on Analysis of CBA*

Harvard nevertheless argues that the claims "plausibly can be said to depend upon the meaning of" or "arguably hinge[] upon an interpretation of" the governing CBA.  *Flibotte* v. *Pennsylvania Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997).[2]  I will discuss in turn the ways that each claim might depend upon interpretation of the CBA.

---

[2] Moreover, if Harvard were correct, Hernandez's claims might have to be dismissed in deference to the grievance procedures prescribed by the CBA, which cover disputes involving the "interpretation and application of a specific provision" of the CBA.  *Cavallaro*, 678 F.3d at 6 (discussing dismissal "deference to the agreed-to remedies," whether denominated as "preemption, deference, [or] exhaustion").  Because I conclude federal jurisdiction is lacking because complete preemption is not made out in this case, however, I do not decide whether CBA-related issues injected into the suit *defensively* might nevertheless provide grounds for defensive preemption under LMRA § 301.  *Id.*

1. <u>Unjust Enrichment</u>

In support of removal, Harvard focuses on complete preemption of the unjust enrichment claim, arguing that CBA interpretation will be required to determine whether any retention of tips was "inequitable" or "unjust."  According to the defendant, there is no inequity in withholding gratuities when wait staff are guaranteed substantial wages--far in excess of Massachusetts statutory minima--under the CBA.  Harvard says these wages were set in contemplation that gratuities would not be remitted to employees.

But Harvard does not identify what parts of the CBA are plausibly in dispute or need to be interpreted, rather than merely consulted or applied.  Even if the wages guaranteed under the CBA render Harvard's retention of tips inequitable in some sense, plaintiff has indicated no intention of challenging the amounts paid under the CBA.  In *Cavallaro* v. *UMass Mem'l Healthcare, Inc.*, 678 F.3d 1 (1st Cir. 2012), by contrast, determining the "wages owed" in order for plaintiff employees to prove unjust enrichment depended in substantial part on intricacies of the CBA governing their employement.  *Id.* at 8 ("Determining whether there are wages owed thus will require construing and applying the various 'peculiarities of industry-specific wage and benefit structures' embodied in the CBA--a complicated task better-suited for an arbitrator's

expertise . . . .") (quoting *Adames* v. *Executive Airlines, Inc.*, 258 F.3d 7, 13 (1st Cir. 2001)).  Here, there is no dispute about the wages owed to plaintiffs under the CBA.  The dispute in this case concerns amounts allegedly owed in the form of gratuities--which, as earlier discussed, are a form of compensation wholly extraneous to the CBA.  Thus the governing CBA need only be "consulted" to establish the compensation it guarantees wait staff employees.  The CBA-guaranteed compensation can then be compared to state minima or the amount employees otherwise would have earned from gratuities, or deployed for other purposes by the parties in their dispute as to whether there is "inequity" in withholding gratuities.  Such exercises do not entail CBA "interpretation."

Even if CBA "interpretation" were somehow required, defendant's argument--that withholding gratuities would not be inequitable because of generous CBA compensation rates established on the understanding that wait staff would not retain tips--is defensive in nature.  The complaint, on its face, presents a cognizable claim for unjust enrichment solely based on the withholding of gratuities.  Harvard's injection of the CBA into the case, in order to defend against unjust enrichment by challenging "inequity," does not provide a basis for removal. *Caterpillar*, 482 U.S. at 398-99.

That Harvard's CBA-related arguments are purely defensive is

highlighted by the fact that the unjust enrichment claim is derivative of the alleged violation of the Tips Law. *Williamson v. DT Mgmt., Inc.*, No. 021827D, 2004 WL 1050582, at *12, *14 (Mass. Super. Mar. 10, 2004) (violation of Tips Law "may form the basis for liability" in quantum meruit and unjust enrichment).[3] As discussed in Part II.C.2 *infra*, the CBA is entirely irrelevant to liability under the Tips Law. Establishing unjust enrichment based on liability under the Tips Law is thus equally independent of CBA interpretation. True, unlike liability under the Tips Law, the CBA and the bargaining history may provide a defense to unjust enrichment; the CBA thus may relieve Harvard from liability as to unjust enrichment by defensive preemption, or on the merits. But given that plaintiff's unjust enrichment claim is on its face derivative of liability under the Tips Law, which cannot plausibly be said to depend on CBA interpretation, the claim is not completely preempted. *Cf. Wadsworth v. KSL Grant Wailea Resort, Inc.*, 818 F. Supp. 2d 1240, 1255 (D. Haw. 2010) (refusing to find complete preemption of unjust enrichment claim premised on liability under Hawaii statute analogous to Massachusetts Tips Law, even when CBA relevant to defense).

---

[3] Because an unjust enrichment claim under Massachusetts law is subject to a six-year statute of limitations, *see Williamson*, 2004 WL 1050582 at *12, *14, plaintiffs hope to recover an additional three years of damages beyond the three-year statute of limitations applicable to a claim for violation of the Tips Law, *see* Mass. Gen. Laws ch. 149, § 150.

For the foregoing reasons, I conclude Hernandez's unjust enrichment claim is not completely preempted. Moreover, prescinding from these nuances to complete preemption doctrine for a moment, I note that defendant's proposed approach to complete preemption is troubling for a more general reason. Defendant's argument that the "inequity" of withholding non-CBA compensation can only be assessed when taking into account the compensation provided by the CBA could apply to any claim for undercompensation. In other words, defendant essentially argues for complete preemption of all unjust enrichment claims against employers in a collective bargaining relationship with their employees. The First Circuit gave no indication it meant its opinion in *Cavallaro* to sweep so broadly, and the Supreme Court has repeatedly warned against finding claims completely preempted merely based upon the existence of a collective bargaining relationship. *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 211 (1985) ("Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law."); *Caterpillar*, 482 U.S. at 396 n.10 ("Claims bearing no relationship to a collective-bargaining agreement beyond the fact that they are asserted by an individual covered by such an agreement are simply not pre-empted by § 301.").

### 2. Massachusetts Tips Law

Harvard also argues that resolving Hernandez's claim under the Massachusetts Tips Law will require interpretation of the collective bargaining relationship--which, Harvard argues, establishes the understanding that wait staff would not receive gratuities. For example, Harvard observes that, in negotiations about an earlier version of the CBA, the Union rejected a proposed wait staff position that would be paid lower hourly wages but guaranteed to be paid a 15% gratuity plus any additional tips. Moreover, CBA negotiations have been conducted in the shadow of a no-tipping policy made known to wait staff in 1998. Harvard argues that, if the no-tipping policy is assumed in the bargaining relationship, the CBA would need to be interpreted to determine whether the parties modified the state law standard for payment of gratuities. *Cf. Vera* v. *Saks & Co.*, 335 F.3d 109, 115 (2d Cir. 2003) (per curiam) (in a case involving reduction of sales commissions, state statute prohibiting wage deductions found completely preempted because interpretation of CBA required to determine whether CBA postponed when commissions were "earned" such that commission adjustments prior to that point could not be an illegal wage "reduction").

This argument is unconvincing for any number of reasons. To start, it is not clear that "interpretation" of bargaining history necessarily gives rise to complete preemption. Harvard

-10-

relies on *DiGiantommaso* v. *Globe Newspaper Co., Inc.*, 632 F. Supp. 2d 85, 89 (D. Mass. 2009), but that case is readily distinguishable.  There, plaintiffs claimed an entitlement to additional break time based on an implied agreement by their employer.  Whether such an implied obligation existed depended not only on the broader relationship of the parties, but also specifically on interpretation of the CBA--at the very least to determine whether the CBA was the sole agreement between the parties.  *DiGiantommaso*, 632 F. Supp. 2d at 85.  The CBA plays no such role here, where the claimed entitlement to gratuities is not premised on any implicit agreement by the employer, but on an independent right in state law.  *Cf. Alderman*, 733 F. Supp. 2d at 469.

Whether the CBA seeks to modify the standard for payment of gratuities also remains a red herring.  A practice or policy of an employer prohibiting gratuities is not, in and of itself, illegal under Massachusetts law.  Indeed, a no-tipping policy is entirely consistent with Massachusetts law so long as patrons are informed that surcharges in the form of house or administrative fees "do[] not represent a tip or service charge for wait staff employees," M.G.L. ch. 149, § 152A(d), and are informed that tipping wait staff directly is prohibited, *id.* § 152A(b); *cf. Meshna* v. *Scrivanos*, No. 201101849BLS1, 2012 WL 414476, at *2-3 (Mass. Super. Dec. 21, 2011) (Tips Law "does not say that the

employer must permit employees to receive tips, or must permit customers to give tips to employees" so long as no-tipping policy "announced with sufficient effectiveness to prevent any misapprehension among customers").

It is thus irrelevant for purposes of the Massachusetts Tips Law whether wait staff were not paid gratuities based on an implicit CBA-derived no-tipping policy.  Indeed, such a policy would not--even if it could--modify the requirements of the Massachusetts Tips Law.[4]  Plaintiff's claim thus cannot plausibly be said to depend upon CBA-analysis geared toward determining whether a no-tipping policy existed.  Once gratuities are withheld from the wait staff (as Harvard admits they were here), only factual questions remain for purposes of liability under the Massachusetts Tips Law--namely, whether patrons were informed that tipping is prohibited (as all seem to agree that they were), and whether any surcharges were properly denominated as administrative and patrons were adequately informed that such

---

[4]As recognized by the First Circuit in *Cavallaro*, there is some uncertainty in Supreme Court complete preemption doctrine as to whether rights created by certain state regulatory statutes are "nonwaivable" or "nonnegotiable," and the extent to which such statutes may be completely preempted by § 301. *Cavallaro*, 678 F.3d at 7; *see generally Livadas* v. *Bradshaw*, 512 U.S. 107, 123 (1994) ("§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law . . . ."); *Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 n.7 (1988) ("It is conceivable that a State could create a remedy that, although nonnegotiable, nonetheless turned on the interpretation of a collective-bargaining agreement for its application.").

surcharges would not be remitted to wait staff (as appears to be the crux of the factual dispute here).  *Cf. Wadsworth*, 818 F. Supp. 2d at 1251 (rejecting complete preemption of analogous Hawaii tips statute by similar reasoning).  These are matters wholly divorced from the analysis of the governing CBA and thus from the complete preemptive force of LMRA § 301.[5]

Harvard is surely correct that, if it is held liable for noncompliance with the consumer-facing aspects of the Massachusetts Tips Law, then wait staff will receive, by Harvard's lights, a "windfall" of gratuities despite having already received substantial wages under the CBA.  Massachusetts courts, however, have not been concerned with such a turn of events, finding that substantial wages paid under an employment contract were irrelevant to an employer's liability under the Tips Law.  *Bednark,* 942 N.E.2d at 1011 n.12*; Cooney* v. *Compass Group Foodservice*, 870 N.E.2d 668, 673 (Mass. App. Ct. 2007).  Although the employment contracts in *Bednark* and *Cooney* were not the products of collective bargaining, generous wages paid

---

[5] It is consistent with my analysis that Harvard's termination of employees based on their retention of tips in violation of the no-tipping policy has been upheld in arbitration.  The termination of an employee is a natural subject for submission to the CBA-prescribed grievance process because Article 5 of the governing CBA provides that an employee may be discharged only for just cause.  By contrast, the CBA is silent on the issue of tips.  Grievance of a termination thus sheds little light on whether state law claims regarding independent disputes about the payment of tips implicate the CBA.

pursuant to a CBA are equally irrelevant to the question of liability.

### III. CONCLUSION

This matter belongs in state court.  There, defendant may pursue its federal preemption defenses, which do not provide a basis for removal but which the state court is competent to adjudicate.  To the extent Harvard's various arguments as to complete preemption also play a role in its federal preemption defenses, they may be presented to the state court.  Accordingly, I do not resolve defendant's federal preemption defenses-- including those under *Machinists*, *Garmon*, and (unlikely as defendant's prospects for success may be given the foregoing discussion) *defensive* preemption under LMRA § 301.

For the reasons set forth more fully above, plaintiff's motion to remand, Dkt. No. 10, is GRANTED.  This case shall be REMANDED to Middlesex Superior Court, where it was originally filed.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE